IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFY HEALY, | No. 2:19-CV-2052-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| SHAGUFTA YASMEEN, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is plaintiff's complaint (ECF No. 1) alleging ten claims of deliberate indifference to serious medical needs in violation of his Eighth Amendment rights.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d

1

1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names five defendants: (1) Dr. Shagufta Yasmeen, (2) Dr. Sahir Naseer, (3) Dr. G. Williams, (4) Dr. Amy Adams, and (5) the unidentified manufacturer/distributor of "Gadolinium" contrast dye.

Plaintiff, a prisoner at California Health Care Facility, is medically disabled and utilizes a wheelchair. Beginning in 2015, Plaintiff has routinely complained to defendants Yasmeen and Naseer about various afflictions that cause him to feel severe chronic pain.  Plaintiff alleges defendants Yasmeen and Nasser violated his Eighth Amendment rights by refusing to treat the medical needs he has brought to their attention.  Additionally, plaintiff alleges that defendant Williams, along with defendants Yasmeen and Nasser, interfered with plaintiff's previous pain-related treatment by discontinuing his pain medication with falsified documentation.  Plaintiff also alleges that defendant Adams acted with deliberate indifference towards plaintiff's serious medical needs by failing to act upon plaintiff's request.  Finally, plaintiff alleges that the manufacturer/distributor of "Gadolinium" contrast dye, used on plaintiff during an MRI scan, was aware of the harmful effects it caused when the dye fails to exit the body.

/ / /

/ / /

/ / /

/ / /

<u>Claim I – Plaintiff's Left Knee</u>

Plaintiff suffers chronic pain in his left knee due to a torn/missing anterior cruciate ligament, a torn medial collateral ligament, a torn/missing meniscus, and severe degenerative joint disease. Despite plaintiff complaining since 2015, defendants Yasmeen and Naseer refuse to remedy his injuries or treat his pain. Plaintiff acknowledges, however, defendants repeatedly informed him that he is unfit for any surgeries, and plaintiff asserts that nothing less than total left knee replacement surgery would repair his knee.

<u>Claim II – Plaintiff's Right Foot and Ankle</u>

Plaintiff suffers from chronic pain in his right foot and ankle due to an incident from 2005. Plaintiff began complaining to defendants Yasmeen and Naseer about his foot and ankle in 2015, but they ignored his complaints. On June 21, 2016, plaintiff fell, further injuring his right foot and ankle. An x-ray examination of plaintiff's foot showed he suffered a possible fracture, but defendants refused to order an x-ray of plaintiff's ankle despite plaintiff's protest. On April 30, 2017, defendant Naseer finally ordered an x-ray of plaintiff's ankle that revealed the loss of the subtalar joint suggesting collapse or malalignment in his ankle. According to plaintiff, defendants Yasmeen and Naseer refuse to remedy the injury or treat his pain.

<u>Claim III – Plaintiff's Spine</u>

Plaintiff alleges he routinely complained to defendants Yasmeen, Naseer, and Williams about severe chronic pain in his neck and back, general loss of mobility, and the loss of feeling/strength in his arms and legs. Plaintiff attributes his ailments to the damage and deterioration of the lumbar and cervical regions of his spine. After one and a half years of complaints to defendant Naseer, plaintiff underwent an MRI of the lumbar region of his spine on October 24, 2018. The MRI showed bodily damage. However, plaintiff alleges defendants Yasmeen, Naseer, and Williams refused to discuss remedying his spine or treating the pain the injury causes him. Furthermore, plaintiff contends that defendants ignored the pain he feels in the cervical region of his spine.

/ / /

/ / /

### Claim IV – Plaintiff's Lower Leg Wounds

Plaintiff alleges defendant Yasmeen refused to supply plaintiff with dressing supplies to treat wounds on his lower legs caused by reduced circulation. Plaintiff also alleges he has been unable to use dressing due to the pain they cause him after defendants Yasmeen, Williams, and Naseer discontinued his pain medication. Defendants prevention of plaintiff from using compression dressing, he alleges, exacerbated the wounds on his legs. Plaintiff also claims defendant Adams prevented treatment of his wounds after he wrote her a letter regarding his situation, dated December 25, 2016.

### Claim V – Plaintiff's Left Shoulder

In January 2016, plaintiff injured his left shoulder.  After weeks of complaints from plaintiff, defendant Yasmeen ordered an x-ray.  The x-ray's results showed plaintiff likely suffered a rotator cuff injury.  Despite the x-ray's results and plaintiff telling defendant Yasmeen that he felt a muscle tear, defendant Yasmeen refused to evaluate the shoulder anymore, arbitrarily attributing plaintiff's injury to arthritis.  Defendants Yasmeen and Williams reported that plaintiff was non-compliant and faking his symptoms when he failed to perform physical therapy exercises.

On December 13, 2016, after eleven months of plaintiff complaining about his shoulder, defendant Yasmeen ordered an MRI of plaintiff's shoulder.  The MRI results showed that plaintiff suffered five tears in his shoulder.  Defendant Naseer ruled out surgery to fix plaintiff's shoulder since he believed plaintiff was unfit to undergo any surgical procedure.  However, Naseer never allowed plaintiff to see specialists who could perform a surgical viability evaluation.  Defendant Naseer sent plaintiff to physical therapy again.  The physical therapist stated that the damage to plaintiff's left shoulder was too extensive for physical therapy to be of any benefit.

In November 2017, plaintiff's left shoulder became partially dislocated, showing that its condition was worsening.  Plaintiff became increasingly reliant on his right arm and was having difficulty performing daily activities.  In late 2018, plaintiff suffered an injury to his right shoulder.  Plaintiff complained to defendant Naseer on a weekly basis for six months before

1    defendant Naseer ordered an MRI.  The results of the MRI on May 8, 2019 showed two tears,

2    narrowing joint space, and cartilage loss.  Defendant Williams falsely reported that plaintiff lied

3    about his range of motion abilities, preventing plaintiff from receiving treatment.

4                    Claim VI – Plaintiff's Bedside Commode

5                    Plaintiff has fallen on multiple occasions while transferring between his

6    wheelchair and toilet, causing injuries, like the damage to his right foot and ankle described in

7    claim II.  An occupational therapist recommended plaintiff use a bedside commode to help him

8    transfer between his wheelchair and toilet on September 23, 2015.  Defendants Yasmeen,

9    Williams, and Naseer refused to supply plaintiff with the commode for years.

10                   Defendant Yasmeen did not provide any justification for not supplying the

11   commode.  Defendant Williams stated that the commode would be unsafe and unstable despite

12   plaintiff using one in the shower without any problems and plaintiff already falling without the

13   toilet commode.  Defendant Williams falsely reported that plaintiff previously refused a bedside

14   commode.  Defendant Naseer also refused to supply plaintiff with the commode without

15   justification.  Finally, plaintiff detailed the aforementioned issues to defendant Adams with

16   defendants Yasmeen, Williams, and Naseer in his letter, dated December 25, 2016.

17                   On April 12, 2018, plaintiff was supplied a commode by an unidentified physician,

18   and has not fallen while transferring between the toilet and wheelchair since.

19                   Claim VII - Plaintiff's Photophobia

20                   Plaintiff suffers from severe photophobia.  Plaintiff used to have solar shield

21   sunglasses and accommodations to his cell that helped his condition.  Although the sunglasses

22   and accommodations were supposed to be permanent, unidentified officers decided they were

23   supposed to be renewed.  Defendant Yasmeen refused to renew plaintiff's treatment.  After nine

24   to ten months of complaints from plaintiff, defendant Naseer ordered an incorrect pair of solar

25   shield sunglasses and refused to order the correct kind.  Plaintiff informed defendant Adams of

26   the aforementioned issues in his letter, dated December 25, 2016.

27   / / /

28   / / /

### Claim VIII – Plaintiff's Medication

In May 2016, defendant Yasmeen reduced plaintiff's Methadone dosage. Defendants Yasmeen and Williams falsified documents to justify the dosage reduction. Eventually, defendant Naseer discontinued plaintiff's prescribed dosage, while also using false information as justification. Defendant Naseer also discontinued plaintiff's medication used to treat his neuropathic pain. Finally, defendants Naseer and Yasmeen refused to prescribe medication to treat plaintiff's migraines.

### Claim IX – Ambulance

Since 2012, plaintiff has been transported to outside medical appointments by ambulance. An ambulance allows for a reclined body position and correct levels of oxygen supplementation. Defendants Yasmeen and Naseer refuse to order transportation by ambulance for plaintiff, causing plaintiff to miss many appointments, including four leg surgeries. Defendant Williams also wrote false reports concerning plaintiff's transportation needs that ignored his supplemental oxygen requirements.

ADA vans are the alternative mode of transportation provided to plaintiff, but the vans do not provide reclined transport, sufficient oxygen, nor adequate space to elevate his legs in his wheelchair during transportation.

### Claim X – Gadolinium

Plaintiff was injected with "Gadolinium" contrast dye during MRI examinations on October 10, 2018 and January 2, 2019. Soon after the October 10, 2018 MRI, plaintiff complained to defendant Naseer about new and unusual bone/joint pain and fuzzy thought processes. Defendant dismissed plaintiff's concerns as symptoms of arthritis and refused to address plaintiff's diminished mental capabilities. In February 2019, plaintiff learned his issues aligned with symptoms of "Gadolinium" failing to leave the body. Plaintiff alleges defendants Naseer and manufacturer/distributor of "Gadolinium" were aware of the harmful effects of its use, and never informed plaintiff prior to it being used on him.

///

///

## II.  DISCUSSION

Plaintiff alleges sufficient facts to state cognizable claims that defendants Yasmeen, Naseer and Williams violated his Eighth Amendment rights by their deliberate indifference to his serious medical needs in claims II, III, IV, V, VI, VII, IX, and X. The Court, however, finds that all other claims against all other defendants fail to make out a valid claim under § 1983.

### A.     Medical Needs

Plaintiff's complaint against defendants Yasmeen, Naseer and Williams pertaining to the treatment of his left knee and the discontinuation of his pain medication fail to state cognizable claims.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by

1 Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if the failure to
2 treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and
3 wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled
4 on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see
5 also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness
6 are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2)
7 whether the condition significantly impacts the prisoner's daily activities; and (3) whether the
8 condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122,
9 1131-32 (9th Cir. 2000) (en banc).

10        The requirement of deliberate indifference is less stringent in medical needs cases
11 than in other Eighth Amendment contexts because the responsibility to provide inmates with
12 medical care does not generally conflict with competing penological concerns.  See McGuckin,
13 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to
14 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
15 1989).  The complete denial of medical attention may constitute deliberate indifference.  See
16 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical
17 treatment, or interference with medical treatment, may also constitute deliberate indifference.  See
18 Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate
19 that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

20        Negligence in diagnosing or treating a medical condition does not, however, give
21 rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a
22 difference of opinion between the prisoner and medical providers concerning the appropriate
23 course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,
24 90 F.3d 330, 332 (9th Cir. 1996).

25 / / /
26 / / /
27 / / /
28 / / /

8

### i. Non-Cognizable Claim I – Plaintiff's Left Knee

Plaintiff's allegations in claim I attempt to hold defendants Yasmeen and Naseer liable for negligence or medical malpractice, rather than deliberate indifference to his damaged knee. Plaintiff states that nothing less than total left knee replacement surgery would suffice to repair the damage to his left knee. Defendants Yasmeen and Naseer found that plaintiff is unfit for any type of surgery due to the condition of his heart and lungs. Despite plaintiff's claim that he has never been seen by a specialist for a surgical viability evaluation, plaintiff does not allege that defendants Yasmeen and Naseer are unqualified to diagnose plaintiff as unfit for the surgery. Negligence in diagnosing or treating a medical condition does not give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106.

### ii. Non-Cognizable Claim VIII – Plaintiff's Medication

Plaintiff's allegations in claim VIII are another attempt to hold defendants Yasmeen, Naseer, and Williams liable for negligence or medical malpractice. Although plaintiff's medications were reduced and discontinued, negligence in diagnosing or treating plaintiff does not amount to deliberate indifference of his serious illnesses. The difference of opinion between plaintiff and defendants regarding the reduction and discontinuation of his medication did not violate his Eighth Amendment rights. See Jackson, 90 F.3d at 332.

**B.** **Supervisor Liability**

Plaintiff's complaint against defendant Adams for not intervening on his behalf after plaintiff wrote her a letter also fails to state a cognizable claim.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory

1    personnel who implement a policy so deficient that the policy itself is a repudiation of
2    constitutional rights and the moving force behind a constitutional violation may, however, be
3    liable even where such personnel do not overtly participate in the offensive act.  See Redman v.
4    Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

5    When a defendant holds a supervisory position, the causal link between such
6    defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.
7    Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
8    1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in
9    civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
10   Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the
11   official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

12   Plaintiff contends he wrote defendant Adams a letter detailing his allegedly
13   unconstitutional treatment by the other defendants in claims IV, VI, and VII, and that she had the
14   authority to fix his situation.  However, mere acquiescence on the part of defendant Adams does
15   not suffice to hold her liable under the Eighth Amendment.  Plaintiff never alleges defendant
16   Adams directed any of the other defendants, nor does plaintiff claim that she implemented a
17   policy that encouraged their alleged unconstitutional treatment.

18   **C.    Private Entities**

19   Although plaintiff never identifies the manufacturer/distributor of "Gadolinium,"
20   the manufacturer/distributor likely being a private entity means plaintiff cannot sue the defendant
21   under § 1983.  In order to raise a § 1983 claim against any defendant, the defendant must
22   allegedly cause plaintiff injury while acting under color of state law.  Generally, private parties
23   are not acting under color of state law.  See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir.
24   1991).  Plaintiff never alleges that the manufacturer/distributor of "Gadolinium" acted under color
25   of state law nor conspired with state officials to deprive plaintiff of his constitutional rights.
26   Therefore, plaintiff does not cognizable claim against defendant in Claim X.
27   / / /
28   / / /

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  June 12, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE