**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFF HEALY,<br><br>    Plaintiff,<br><br>    v.<br><br>SHAGUFTA YASMEEN, et al.,<br><br>    Defendants. | No. 2:19-CV-2052-WBS-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's complaint (ECF No. 1).

        The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

In its June 15, 2020, screening order, the Court summarized Plaintiff's allegations as follows:

> Plaintiff names five defendants: (1) Dr. Shagufta Yasmeen, (2) Dr. Sahir Naseer, (3) Dr. G. Williams, (4) Dr. Amy Adams, and (5) the unidentified manufacturer/distributor of "Gadolinium" contrast dye.
> Plaintiff, a prisoner at California Health Care Facility, is medically disabled and utilizes a wheelchair. Beginning in 2015, Plaintiff has routinely complained to defendants Yasmeen and Naseer about various afflictions that cause him to feel severe chronic pain. Plaintiff alleges defendants Yasmeen and Nasser violated his Eighth Amendment rights by refusing to treat the medical needs he has brought to their attention. Additionally, plaintiff alleges that defendant Williams, along with defendants Yasmeen and Nasser, interfered with plaintiff's previous pain-related treatment by discontinuing his pain medication with falsified documentation. Plaintiff also alleges that defendant Adams acted with deliberate indifference towards plaintiff's serious medical needs by failing to act upon plaintiff's request. Finally, plaintiff alleges that the manufacturer/distributor of "Gadolinium" contrast dye, used on plaintiff during an MRI scan, was aware of the harmful effects it caused when the dye fails to exit the body.
>
> Claim I – Plaintiff's Left Knee
> Plaintiff suffers chronic pain in his left knee due to a torn/missing anterior cruciate ligament, a torn medial collateral ligament, a torn/missing meniscus, and severe degenerative joint disease. Despite plaintiff complaining since 2015, defendants Yasmeen and Naseer refuse to remedy his injuries or treat his pain. Plaintiff acknowledges, however, defendants repeatedly informed him that he is unfit for any surgeries, and plaintiff asserts that nothing less than total left knee replacement surgery would repair his knee.
>
> Claim II – Plaintiff's Right Foot and Ankle
> Plaintiff suffers from chronic pain in his right foot and ankle due to an incident from 2005. Plaintiff began complaining to defendants Yasmeen and Naseer about his foot and ankle in 2015, but they ignored his complaints. On June 21, 2016, plaintiff fell, further injuring his right foot and ankle. An x-ray examination of plaintiff's foot showed he suffered a possible fracture, but defendants refused to order an x-ray of plaintiff's ankle despite plaintiff's protest. On April 30, 2017, defendant Naseer finally ordered an x-ray of plaintiff's ankle that revealed the loss of the subtalar joint suggesting collapse or malalignment in his ankle.

According to plaintiff, defendants Yasmeen and Naseer refuse to remedy the injury or treat his pain.

### Claim III – Plaintiff's Spine

Plaintiff alleges he routinely complained to defendants Yasmeen, Naseer, and Williams about severe chronic pain in his neck and back, general loss of mobility, and the loss of feeling/strength in his arms and legs. Plaintiff attributes his ailments to the damage and deterioration of the lumbar and cervical regions of his spine. After one and a half years of complaints to defendant Naseer, plaintiff underwent an MRI of the lumbar region of his spine on October 24, 2018. The MRI showed bodily damage. However, plaintiff alleges defendants Yasmeen, Naseer, and Williams refused to discuss remedying his spine or treating the pain the injury causes him. Furthermore, plaintiff contends that defendants ignored the pain he feels in the cervical region of his spine.

### Claim IV – Plaintiff's Lower Leg Wounds

Plaintiff alleges defendant Yasmeen refused to supply plaintiff with dressing supplies to treat wounds on his lower legs caused by reduced circulation. Plaintiff also alleges he has been unable to use dressing due to the pain they cause him after defendants Yasmeen, Williams, and Naseer discontinued his pain medication. Defendants prevention of plaintiff from using compression dressing, he alleges, exacerbated the wounds on his legs. Plaintiff also claims defendant Adams prevented treatment of his wounds after he wrote her a letter regarding his situation, dated December 25, 2016.

### Claim V – Plaintiff's Left Shoulder

In January 2016, plaintiff injured his left shoulder. After weeks of complaints from plaintiff, defendant Yasmeen ordered an x-ray. The x-ray's results showed plaintiff likely suffered a rotator cuff injury. Despite the x-ray's results and plaintiff telling defendant Yasmeen that he felt a muscle tear, defendant Yasmeen refused to evaluate the shoulder anymore, arbitrarily attributing plaintiff's injury to arthritis. Defendants Yasmeen and Williams reported that plaintiff was non-compliant and faking his symptoms when he failed to perform physical therapy exercises.

On December 13, 2016, after eleven months of plaintiff complaining about his shoulder, defendant Yasmeen ordered an MRI of plaintiff's shoulder. The MRI results showed that plaintiff suffered five tears in his shoulder. Defendant Naseer ruled out surgery to fix plaintiff's shoulder since he believed plaintiff was unfit to undergo any surgical procedure. However, Naseer never allowed plaintiff to see specialists who could perform a surgical viability evaluation. Defendant Naseer sent plaintiff to physical therapy again. The physical therapist stated that the damage to plaintiff's left shoulder was too extensive for physical therapy to be of any benefit.

In November 2017, plaintiff's left shoulder became partially dislocated, showing that its condition was worsening. Plaintiff became increasingly reliant on his right arm and was having difficulty performing daily activities. In late 2018, plaintiff suffered an injury to his right shoulder. Plaintiff complained to defendant Naseer on a weekly basis for six months before defendant Naseer ordered an MRI. The results of the MRI on May 8, 2019 showed two tears, narrowing joint space, and cartilage loss. Defendant Williams falsely reported that plaintiff lied about his range of motion abilities, preventing plaintiff from receiving treatment.

///

### Claim VI – Plaintiff's Bedside Commode

Plaintiff has fallen on multiple occasions while transferring between his wheelchair and toilet, causing injuries, like the damage to his right foot and ankle described in claim II. An occupational therapist recommended plaintiff use a bedside commode to help him transfer between his wheelchair and toilet on September 23, 2015. Defendants Yasmeen, Williams, and Naseer refused to supply plaintiff with the commode for years.

Defendant Yasmeen did not provide any justification for not supplying the commode. Defendant Williams stated that the commode would be unsafe and unstable despite plaintiff using one in the shower without any problems and plaintiff already falling without the toilet commode. Defendant Williams falsely reported that plaintiff previously refused a bedside commode. Defendant Naseer also refused to supply plaintiff with the commode without justification. Finally, plaintiff detailed the aforementioned issues to defendant Adams with defendants Yasmeen, Williams, and Naseer in his letter, dated December 25, 2016.

On April 12, 2018, plaintiff was supplied a commode by an unidentified physician, and has not fallen while transferring between the toilet and wheelchair since.

### Claim VII - Plaintiff's Photophobia

Plaintiff suffers from severe photophobia. Plaintiff used to have solar shield sunglasses and accommodations to his cell that helped his condition. Although the sunglasses and accommodations were supposed to be permanent, unidentified officers decided they were supposed to be renewed. Defendant Yasmeen refused to renew plaintiff's treatment. After nine to ten months of complaints from plaintiff, defendant Naseer ordered an incorrect pair of solar shield sunglasses and refused to order the correct kind. Plaintiff informed defendant Adams of the aforementioned issues in his letter, dated December 25, 2016.

### Claim VIII – Plaintiff's Medication

In May 2016, defendant Yasmeen reduced plaintiff's Methadone dosage. Defendants Yasmeen and Williams falsified documents to justify the dosage reduction. Eventually, defendant Naseer discontinued plaintiff's prescribed dosage, while also using false information as justification. Defendant Naseer also discontinued plaintiff's medication used to treat his neuropathic pain. Finally, defendants Naseer and Yasmeen refused to prescribe medication to treat plaintiff's migraines.

### Claim IX – Ambulance

Since 2012, plaintiff has been transported to outside medical appointments by ambulance. An ambulance allows for a reclined body position and correct levels of oxygen supplementation. Defendants Yasmeen and Naseer refuse to order transportation by ambulance for plaintiff, causing plaintiff to miss many appointments, including four leg surgeries. Defendant Williams also wrote false reports concerning plaintiff's transportation needs that ignored his supplemental oxygen requirements.

ADA vans are the alternative mode of transportation provided to plaintiff, but the vans do not provide reclined transport, sufficient oxygen, nor adequate space to elevate his legs in his wheelchair during transportation.

///

///

<u>Claim X – Gadolinium</u>
Plaintiff was injected with "Gadolinium" contrast dye during MRI examinations on October 10, 2018 and January 2, 2019. Soon after the October 10, 2018 MRI, plaintiff complained to defendant Naseer about new and unusual bone/joint pain and fuzzy thought processes. Defendant dismissed plaintiff's concerns as symptoms of arthritis and refused to address plaintiff's diminished mental capabilities. In February 2019, plaintiff learned his issues aligned with symptoms of "Gadolinium" failing to leave the body. Plaintiff alleges defendants Naseer and manufacturer/distributor of "Gadolinium" were aware of the harmful effects of its use, and never informed plaintiff prior to it being used on him.

ECF No. 9, pgs. 2-6.

## II. DISCUSSION

On June 15, 2020, the Court screened Plaintiff's complaint and found that he stated some cognizable claims and other non-cognizable claims. <u>See</u> ECF No. 9. Specifically, the Court found:

> Plaintiff alleges sufficient facts to state cognizable claims that defendants Yasmeen, Naseer and Williams violated his Eighth Amendment rights by their deliberate indifference to his serious medical needs in claims II, III, IV, V, VI, VII, IX, and X. The Court, however, finds that all other claims against all other defendants fail to make out a valid claim under § 1983.

ECF No. 9, pg. 7.

As to defendant Adams, who is alleged to be the Chief Medical Officer, the Court stated:

> Plaintiff's complaint against defendant Adams for not intervening on his behalf after plaintiff wrote her a letter also fails to state a cognizable claim.
> Supervisory personnel are generally not liable under § 1983 for the actions of their employees. <u>See</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind

> a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).
> When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.
> Plaintiff contends he wrote defendant Adams a letter detailing his allegedly unconstitutional treatment by the other defendants in claims IV, VI, and VII, and that she had the authority to fix his situation. However, mere acquiescence on the part of defendant Adams does not suffice to hold her liable under the Eighth Amendment. Plaintiff never alleges defendant Adams directed any of the other defendants, nor does plaintiff claim that she implemented a policy that encouraged their alleged unconstitutional treatment.

ECF No. 9, pgs. 9-10.

The Court also addressed plaintiff's claim against the manufacturer/distributor of Gadolinium:

> Although plaintiff never identifies the manufacturer/distributor of "Gadolinium," the manufacturer/distributor likely being a private entity means plaintiff cannot sue the defendant under § 1983. In order to raise a § 1983 claim against any defendant, the defendant must allegedly cause plaintiff injury while acting under color of state law. Generally, private parties are not acting under color of state law. See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). Plaintiff never alleges that the manufacturer/distributor of "Gadolinium" acted under color of state law nor conspired with state officials to deprive plaintiff of his constitutional rights. Therefore, plaintiff does not cognizable claim against defendant in Claim X.

Id. at 10.

As to Claim I, the Court concluded:

> Plaintiff's allegations in claim I attempt to hold defendants Yasmeen and Naseer liable for negligence or medical malpractice, rather than deliberate indifference to his damaged knee. Plaintiff states that nothing less than total left knee replacement surgery would suffice to repair the damage to his left knee. Defendants Yasmeen and Naseer found that plaintiff is unfit for any type of surgery due to the condition of his heart and lungs. Despite plaintiff's claim that he has never been seen by a specialist for a surgical viability evaluation, plaintiff does not allege that defendants Yasmeen and Naseer are unqualified to diagnose plaintiff as unfit for the surgery. Negligence in diagnosing or treating a medical condition does not give rise to a claim under the Eighth Amendment. See

Estelle, 429 U.S. at 106.

ECF No. 9, pg. 9.

Finally, as to Claim VIII, the Court held:

> Plaintiff's allegations in claim VIII are another attempt to hold defendants Yasmeen, Naseer, and Williams liable for negligence or medical malpractice. Although plaintiff's medications were reduced and discontinued, negligence in diagnosing or treating plaintiff does not amount to deliberate indifference of his serious illnesses. The difference of opinion between plaintiff and defendants regarding the reduction and discontinuation of his medication did not violate his Eighth Amendment rights. See Jackson, 90 F.3d at 332.

Id.

The Court ordered that Plaintiff may either amend his complaint to remedy the deficiencies therein or elect to proceed on his otherwise cognizable claims. Id. No amended complaint followed. Therefore, the Court now recommends dismissal of the defective claims identified above, as well as dismissal of all claims against defendant Adams and the manufacturer/distributor of Gadolinium.

### III.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, Plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that:

1. This action proceed on Plaintiff's Eighth Amendment claims of medical indifference against Defendants Yasmeen, Naseer, and Williams, as specified in the Court's June 15, 2020, order;

2. All other claims and Defendants be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of

7

1  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

2  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  Dated:  September 14, 2020

                                      DENNIS M. COTA
                                      UNITED STATES MAGISTRATE JUDGE